UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA    )
                                    )    Case No. 1:13-cr-00142-PB
       v.                         )
                                    )
JOHNATHON IRISH             )
_____)

### UNITED STATES' OBJECTION TO THE DEFENDANT'S MOTION FOR BAIL

Pursuant to 18 U.S.C. § 3142(f), and in light of the factors enumerated in 18 U.S.C. § 3142(g), the United States objects to the defendant's Motion for Bail, and requests that the Court detain the defendant, Johnathon Irish, pending trial. For the reasons set forth below, the defendant presents a real and substantial danger not only to the community at large, but, more specifically, to prospective trial witnesses, and there are no conditions or combinations of conditions that will reasonably assure their safety and the integrity of the upcoming trial. Nor are there sufficient conditions to ensure that the defendant, who poses a potential flight risk, will appear at his scheduled trial.

### Background

The defendant is indicted on charges of engaging in the business of dealing in firearms – precisely, assault rifles – without a federal firearms license, in violation of 18 U.S.C. § 922(a)(1)(A); aiding and abetting the making of a material false statement during the acquisition of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 2; possessing firearms and ammunition as a prohibited person, that is, a regular user of the controlled substance marihuana, in violation of 18 U.S.C. § 922(g)(3); and two counts of making material false statements to a federal agent during the investigation of these crimes, in violation of 18 U.S.C. § 1001. At the age of twenty-

seven, the defendant already carries a lengthy criminal history, including convictions for criminal threatening (December 2003), carrying illegal weapons (October 2006), disorderly conduct (October 2007), theft by unauthorized taking (July 2008), possession of marihuana (October 2008), criminal threatening (October 2008), criminal trespassing (July 2009), and disorderly conduct (January 2013).

Factual Proffer

The evidence in this case demonstrates that throughout 2013, the defendant engaged in the business of building and selling custom assault rifles for profit without the requisite federal firearms license.  Among the illicit firearms transactions were three sales to an undercover FBI agent (hereafter "UC") on May 6, June 21, and October 4, 2013.  On each of those dates, the defendant arrived at a pre-arranged location where he exchanged, for cash, a total of three assault rifles that had been pre-ordered by the UC, and which the defendant had constructed himself from component parts.  Throughout those transactions, which were recorded on videotape, and in other recorded conversations with a confidential informant, the defendant can be seen and heard describing the many firearms he has built and sold to customers over the previous two years.

As part of his ongoing venture to build and sell firearms, he needed to obtain the necessary parts, including assault rifle lower receivers.[1]  The evidence will establish that, on September 21, 2013, the defendant drove his girlfriend (hereafter "S.T.") to a federally licensed firearms dealer, provided her with funds, and asked her to purchase an assault rifle lower receiver in her name, in order to avoid any delay arising from a background check of his own name.  Indeed, the defendant, after being arrested on federal charges and advised of his <u>Miranda</u>

---

[1] The "lower receiver" is the part of the firearm that houses the operating parts – including the trigger group and magazine port – and typically holds the firearm's serial number.  A lower receiver itself constitutes a "firearm" pursuant to 18 U.S.C. § 921(a)(3)(B).

2

rights, admitted as much when he stated that S.T. had purchased the lower receiver on his behalf in order to avoid any background checks of his name, and thus circumvent any associated delays.

While the defendant was purchasing, possessing, and selling various firearms and ammunition, he regularly used marihuana, purchasing and smoking it on a weekly (and often daily) basis with S.T. and a host of other individuals in and before 2013.

During the course of the lengthy federal investigation, the defendant agreed to speak to federal agents on multiple occasions.  In one February 2013 interview, the defendant, when asked by FBI Special Agent Philip Christiana about the current location of his personal firearms, stated that he had recently sold them all to a friend.  A few days later, in a recorded telephone call, the defendant admitted that he had actually buried his firearms at a campground in Northwood, New Hampshire, presumably to avoid their seizure and retention by law enforcement.  Shortly thereafter, the defendant was recorded on videotape displaying the firearms he claimed had been sold.

The defendant was held in state custody on unrelated domestic violence charges from November 1, 2013, until Friday, February 14, 2014, when those charges were dropped and the defendant was transferred to federal custody on the basis of his outstanding indictment.

<u>Argument</u>

The United States objects to the defendant's Motion for Bail, and moves for detention pursuant to 18 U.S.C. § 3142(f), thus bearing the burden of persuading the Court that no condition or combination of conditions of release will assure the defendant's appearance at trial, or the safety of the community.  <u>United States v. Johnson</u>, 2012 WL 40463, *2 (D.N.H. Jan. 6, 2012).  There is no rebuttable presumption in favor of detention in this case, as none of the various charges constitute crimes of violence, or meet the other relevant criteria described in 18

U.S.C. § 3142(e)(2).  Accordingly, the United States is required to prove the defendant's risk of flight by a preponderance of the evidence, and must demonstrate the defendant's dangerousness by clear and convincing evidence.  Id.  That threshold is met here, and detention is appropriate, because each of the factors set forth in 18 U.S.C. § 3142(g) weighs heavily in favor of detaining the defendant pending trial.

**Nature of the Crime (18 U.S.C. § 3142(g)(1))**

The majority of the defendant's criminal charges arise from conduct involving the possession, purchase, or sale of firearms.  Consequently, at its heart, this is a firearms case – to which Congress has called particular attention in calculating a defendant's potential danger to the community.  See 18 U.S.C. § 3142(g)(1) (specifying a select group of cases for particular consideration, including "whether the offense . . . involves . . . [a] firearm, explosive, or destructive device").  Of note is the type of firearm involved.  The defendant was purchasing component parts to build and sell *assault rifles* without the appropriate paperwork, which are notoriously dangerous weapons.  The defendant's possession and sale of such weapons, and his ability to build them from component parts, favors his continued detention pending trial.  See United States v. Jones, 2013 WL 6698105, at *2 (D.D.C. December 19, 2013) (finding that the nature and circumstances of the offense, pursuant to § 3142(g)(1), favored the defendant's continued detention pending trial, in part because a fully loaded, semi-automatic assault rifle with ammunition was found at the defendant's residence during the execution of a search warrant).

**Weight of the Evidence (18 U.S.C. § 3142(g)(2))**

The weight of the evidence in this case is overwhelming.  The defendant was recorded on videotape selling three assault rifles to an undercover federal agent, and during those transactions

and other recorded conversations with a confidential source, the defendant described the many additional firearms he had built and sold for profit.  In addition to the recorded sales and conversations, the government has also obtained several written communications between the defendant and various individuals on Facebook, in which the defendant plainly states that he builds and sells assault rifles – "ARs" – for money.  Consistent with these representations, multiple witnesses will testify that the defendant personally pitched his services to build them assault rifles for below-market prices.

The defendant also made statements – some recorded during the course of the investigation, and others made to federal agents immediately after his arrest on federal charges – that on September 21, 2013, he drove his girlfriend, S.T., to a federally licensed firearms dealer, where he provided her with money and asked her to purchase an assault rifle lower receiver in her name, in order to avoid the use of his own name in the required background check.  As the defendant explained, he needed the lower receiver to build the third assault rifle that he sold to the UC only two weeks later, and was unwilling to risk any delays.

Regarding the defendant's regular marihuana use, more than half-a-dozen witnesses will testify that they sold marihuana to the defendant, saw the defendant using marihuana, or used marihuana with the defendant, on a weekly, if not daily basis during the course of 2012 and 2013.  This evidence is corroborated by text messages to various individuals from the defendant's cellular phone, in which he plainly refers to the purchase and use of marihuana, and by marihuana remnants and paraphernalia seized from the defendant's house shortly after his arrest on state charges.

Finally, in addition to the recorded audio and video of the defendant acknowledging his false statement to a federal agent (about having sold all of his firearms to a friend), the defendant

explicitly admitted in his post-arrest interview that he had, in fact, lied about selling his firearms in February of 2013.

In short, this is not a circumstantial case. Much of the evidence derives from the defendant's own inculpatory admissions, both verbal and written, and the testimony of more than two dozen eyewitnesses.

### History and Characteristics of the Defendant (18 U.S.C. § 3142(g)(3))

The defendant, at the age of twenty-seven, already has a litany of criminal convictions. Moreover, the defendant's lengthy criminal history, in conjunction with myriad police reports filed over the years by family members, former friends, and neighbors, demonstrate a propensity for using firearms in furtherance of his often violent and aggressive behavior. Indeed, the defendant has acknowledged in recorded prison calls that he has difficulty controlling those aggressive tendencies, and is unable to self-manage his anger. Some examples of that historical pattern of violent and confrontational behavior with firearms include the following:

- In May and October of 2011, the defendant posted YouTube videos in which he stated that any perceived threat to his family will be met with deadly force;

- In August of 2012, reports filed with the Brentwood, New Hampshire Police Department detail an incident during which the defendant confronted with a firearm two teenage girls, who had parked in the defendant's neighborhood to play a prank on a high-school friend;

- On February 23, 2013, the defendant attended a firearms rally in front of the State House in Concord, New Hampshire, during which he openly carried an assault rifle, among other firearms and ammunition. Immediately after that rally, the defendant, in a recorded conversation, stated that he did not bring his daughter to the rally because he was concerned there might be a firefight with authorities;

- In September of 2013, an individual was driving through the defendant's residential neighborhood when the defendant, openly carrying a firearm, yelled at him to slow down. According to police reports, the individual exited the vehicle to confront the defendant, at which point the defendant brandished his firearm; and

- In late October of 2013, the defendant asked the local police for permission to fire blank rounds at children to scare them at Halloween.

The defendant, although a longtime New Hampshire resident, has few significant ties to the New Hampshire community aside from some members of his immediately family, a relatively small group of friends, and the members of the various New Hampshire militia groups with whom he associates.  In fact, some of the individuals the defendant frequently communicates with are militia members in Texas and Oklahoma, many of whom likely exist off the grid (or as close to it as possible).  The defendant is unemployed, and has no steady source of income other than disability checks and the money that he makes from his firearms sales.  He has also stated during recorded prison calls with his girlfriend, S.T., that as soon as this ordeal is finished, he wishes to relocate, suggesting that any ties to the community are overstated.

**Nature and Seriousness of the Danger Posed by Defendant (18 U.S.C. § 3142(g)(4))**

The nature and seriousness of the danger posed by the defendant are not limited to the aforementioned anger management issues, or his penchant for using firearms in support of his aggressive outbursts; even more concerning are statements and actions of the defendant that evidence an immediate threat to potential witnesses in this case.  For example, in a recorded prison call, the defendant stated that "if anything happens to [the defendant's] daughter or mother, [S.T.] is going in a hole."  In a different recorded prison call, the defendant expressed his belief that a friend might be cooperating with authorities, and stated that, if true, he would "slit

[the friend's] throat" and "bury him."  The defendant has also menacingly stated that "if I get out

of here and my daughter is in the system and I can't get her out, there will be hell to pay from all

angles – anyone who has anything to do with that."

Perhaps the primary target of the defendant's vitriol, however, is the lead case agent, FBI

Special Agent Philip Christiana, whom the defendant blames directly for all of his current legal

woes.  The defendant can be heard in multiple prison calls casting blame on Special Agent

Christiana, and boasting that he "knows where [Special Agent Christiana] lives," and where

Special Agent Christiana's family attends church.  Putting a point on the threat is information the

United States has obtained indicating that the defendant reached out to at least one former

associate in an attempt to obtain a firearm should he be released pending trial.

Beyond the risk of physical danger, there is a real risk of witness tampering and

intimidation – one that has already borne fruit for the defendant.  When the defendant was

initially charged by complaint, his girlfriend, S.T., worked closely with authorities, and provided

statements which strongly implicated the defendant in the aforementioned criminal conduct.  In

several recorded prison calls, however, the defendant stressed to family and friends his desire to

keep S.T. in the fold to "help his case," and asked a joint friend to pass along the following

message: "If [S.T.] doesn't come clean on her story, if someone doesn't get her the message, we

both go down, or she goes down, and that's just how it is."[2]  Two weeks later, after several

recorded prison calls between the defendant and S.T. (in which S.T. assumed a pseudonym to

avoid detection), S.T. refused to continue speaking with authorities.  Subsequently, on January

16, 2013, a friend of the defendant's received the following Facebook message from the

defendant's account:  "Its [S.T.] . . . Johnathon has me using his facebook to get in touch with

people as I had to delete my account for many reasons.  His message to you is Do not trust his

---

[2] That joint friend was Tony Costello, the individual with whom the defendant suggests he might stay if released.

sister Leslie, and be nice cause more than likely everything that she may have to your or any body is not true.  Im working with those that I can to get him off of his state charges and his federal charges . . . ."

The defendant's actions demonstrate an obvious willingness to exert influence over potential trial witnesses, and his release could seriously compromise the integrity of the May 6 trial.

<u>Conclusion</u>

The defendant's criminal history, his pattern of employing firearms to support his violent and aggressive behavior, his specific threats and attempt to acquire a firearm pending release, his prior lies to authorities about the whereabouts of his personal firearms, and his ability to easily build assault rifles from component parts, when taken together, demonstrate his danger to the community, and therefore the need to keep him detained pending trial.

For all of these reasons, the United States respectfully requests that this Court deny the defendant's Motion for Bail, and order that the defendant be detained pending trial.


Respectfully submitted,

JOHN P. KACAVAS
United States Attorney


By:      <u>/s/ Nick Abramson</u>
         Assistant U.S. Attorney
         Massachusetts Bar # 672267
         53 Pleasant Street, 4th Floor
         Concord, New Hampshire 03301
         (603) 225-1552
         Nick.Abramson@usdoj.gov


9

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2014, I electronically filed the United States' Objection to the Defendant's Motion for Bail with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

/s/ Nick Abramson____
Assistant U.S. Attorney