UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____ )
                                )
UNITED STATES OF AMERICA        )
                                )
V.                              )   CR. NO. 13-cr-00142-PB
                                )
JOHNATHON IRISH                 )
                                )
_____ )

### DEFENDANT'S MOTION TO DISMISS COUNT V, POSSESSION OF A FIREARM BY A REGULAR USER OF A CONTROLLED SUBSTANCE (MARIJUANA)

The defendant has been charged with two counts of making a false statement to a federal agent in violation of 18 U.S.C. § 1001; one count of aiding and abetting the making of a false statement in connection with the acquisition of a firearm in violation of 18 U.S.C. §§ 2 and 922; one count of engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A); and one count of possession of a firearm by a regular user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). He moves the Court to dismiss Count V of the indictment charging him with possessing a firearm while being a regular user of marijuana. Grounds follow:

The defendant asserts that a prohibition on his possession of a firearm under § 922(g)(3) because he is an unlawful user of marijuana is violative of his right to bear arms, as well as his right to both procedural and substantive due process of law, under the Second and Fifth Amendments to the United States Constitution. The defendant asserts that § 922(g)(3) is unconstitutional both facially and as applied in this case. He asserts

that the status as an "unlawful user of marijuana" has never been adjudicated, and the defendant has never been afforded notice or an opportunity to be heard in connection with any determination regarding the applicability of an absolute prohibition upon his right to bear arms. Further, the defendant asserts that any statute that would operate to deprive him of his Second Amendment right must pass a strict scrutiny analysis, and § 922(g)(3) fails that test. Moreover, even if the standard of review is "intermediate scrutiny" the government cannot meet that standard in this case.

The First Circuit has determined that the term "unlawful user" in § 922(g)(3) "requires a temporal nexus between the gun possession and the regular drug use." *United States v.Marceau*, 554 F.3d 24, 30 (1st Cir. 2009) (citing *United States v. Edwards*, 540 F.3d 1156, 1162 (10th Cir. 2008)).2 Thus, "an 'unlawful user' is one who engages in '[(1)] regular use [(2)] over a long period of time [(3)] proximate to or contemporaneous with the [acquisition] of the firearm.'" *United States v. Caparotta*, 676 F.3d 213, 216 (1st Cir. 2012) (citing *Marceau,* supra., 554 F.3d at 30; *Marceau*, in turn, citing *United States v. McCowan*, 469 F.3d 386, 392 n. 4 (5th Cir 2006)).

While the First Circuit suggested in *Marceau* that this definition of "unlawful user" was necessary to avoid unconstitutional vagueness, *Marceau*, supra., 544 F.3d at 30, neither *Marceau* or *Caparotta* addressed the defendant's current Second Amendment argument.

The Supreme Court has now decided that the right to bear arms under the Second

Amendment is a core fundamental personal liberty. *District of Columbia v. Heller*, 554 U.

S. 570 (2008). *Heller* held that the Second Amendment codified a "pre-existing" right

that allows individuals to keep and bear arms. This right was understood by the founders

to encompass not only militia service, but also "self-defense and hunting." Id., at 599. The

right of self-defense in the home is the "central component" of the Second Amendment

protection, *Heller*, 554 U. S. at 599, and this right is "fundamental" and "necessary to our

system of ordered liberty," *MacDonald v. City of Chicago*, 130 S. Ct. 3020, 3042 (2010).

The First Circuit has considered the impact of *Heller* upon its own precedent

involving interpretation and construction of statutory restrictions of the right to bear arms.

In *United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012), the court reconsidered,

specifically in light of *Heller*, its previous holding in *United States v. Chamberlain*, 159

F.3d 656 (1st Cir. 1998). In *Chamberlain*, the court had decided that Maine's ex parte

emergency involuntary admission procedure to a mental health facility was an adequate

process to support a permanent prohibition on firearms possession and prosecution under

18 U. S. C. § 922(g)(4). In *Rehlander*, the court expressly reversed that judgment and the

found that:

> *Heller* now adds a constitutional component. Although the
> right established in *Heller* is a qualified right, ... the right to
> possess arms ... is no longer something that can be withdrawn by
> the government on a permanent and irrevocable basis without
> due process. Ordinarily, to work a permanent or prolonged loss
> of a constitutional liberty or property interest, an adjudicatory
> hearing, including a right to offer and test evidence, if facts are
> in dispute, is required."

3

*Rehlander*, 666 F.3d at 48.   The *Rehlander* court decided that they were "constrained to abandon [*Chamberlain*] by *Heller*, which implicates the Supreme Court's earlier due process precedents.

**The Appropriate Level of Scrutiny**

This court must first determine what level of scrutiny should be applied in examining whether the legislative infringement worked by § 922(g)(3) on Second Amendment rights in general, and in this case in particular, excessively burdens that right. As Justice Scalia said in *Heller*: "We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interestbalancing" approach. The very enumeration of the right takes out of the hands of government – even the Third Branch of Government – the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, supra. 554 U. S. at 634 and further, applying these principals by invalidating the District of Columbia handgun ban: "Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family would fail constitutional muster." *Id*., at 628-29. *Heller* therefore did not establish an appropriate level of scrutiny.

This court should use strict scrutiny in reviewing a claim that § 922(g)(3) infringes the defendant's Second Amendment right. Strict scrutiny, as a method of evaluating the constitutionality of a legislative restriction on core individual constitutional rights,

requires the government to prove that the law in question is as narrowly tailored as possible, and that it is necessary to serve a compelling state interest. *United States v. Playboy Entertainment Group, Inc*., 529 U. S. 803, 813 (2000); *PSI Net, Inc. v. Chapman*, 362 F.3d 227, 233-34 (4th Cir. 2004). The government can show neither in this instance. While the prevention of violence with guns is an important federal interest, it is by no means so compelling as to allow § 922(g)(3)'s broad and absolute restriction of a core constitutional right. Further, § 922(g)(3) is not narrowly tailored because it is over-inclusive in that it disarms even those drug users that do not pose a realistic threat of gun violence, and requires no individualized determination that a particular person poses such a threat. It is also under-inclusive in that it targets only those who use a particular brand of intoxicants, while excluding users of other intoxicants, such as alcohol, who present a comparable or greater risk of gun violence. Under strict scrutiny, § 922(g)(3) must fail.

The First Circuit has not addressed, post-*Heller*, the level of scrutiny to be used in reviewing the enforcement of § 922(g)(3).  The First Circuit has applied intermediate scrutiny § 922(g)(9), which prohibits firearm possession by those convicted of domestic violence misdemeanors. *United States v. Booker* 644 F.3d 12, 25 (1st Cir. 2011). The several circuits that have, however, have rejected the application of strict scrutiny. *United States v. Carter*, 669 F.3d 411, 417 (4th Cir. 2012); *United States v. Yancey*, 621 F.3d 681, 683, (7th Cir. 2010); *United States v. Seay*, 620  F.3d 919, 925 (8th Cir. 2010);

*United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011). These circuits have used instead an intermediate scrutiny approach in analyzing the various firearms violations criminalized under § 922(g). See, *Carter*, supra., 669 F.3d at 417, citing *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010). Under intermediate scrutiny, the question becomes whether there is a "reasonable fit" between the challenged regulation and a "substantial" governmental objective. *Carter*, supra., 669 F.3d at 417.

If intermediate scrutiny is used the government bears the burden of demonstrating the important governmental interest, and that this interest is substantially served by enforcement of the regulation. Here, the defendant asserts that, both facially and as applied to him, § 922(g)(3) does not further a substantial governmental interest without excessively intruding on his core Second Amendment right. The defendant challenges the notion that there is a demonstrable link between those who are simple consumers of drugs, particularly marijuana, and those who have been shown to have engaged in violent conduct with firearms. While considerable data may reflect a link between drugs and gun violence in the business of trafficking in illegal drugs, or in connection with possession of quantities supporting an inference of an intent to distribute, no showing can be made here that the simple consumer of marijuana such as the defendant poses such a threat, or that the defendant in particular does so.  To discharge its burden of establishing a reasonable fit between the important goal of reducing gun violence and the prohibitions of § 922(g)(3), the government may not rely upon mere "anecdote and supposition." *United*

*States v. Playboy Entertainment Group, Inc*., 529 U. S. 803, 822 (2000). Intuition may not supplant tangible evidence. *Carter*, supra., at 418, citing *Chester*, 628 F.3d at 683. Ultimately, the government must demonstrate that § 922(g)(3)'s imposition on Second Amendment rights in general, and the defendant's in particular, proportionately advance a significant governmental interest.

Unlike restrictions based on prior felony or misdemeanor convictions or whether or not someone has been "adjudicated as a mental defective or who has been committed to a mental institution," 18 U.S.C. §922(g)(4), a person is subject to conviction under §922(g)(3) without any prior act or finding notifying him of that restriction.  See, *United States v. Napier*, 233 F.3d 394, 398 (6th Cir. 2000)("§922(g)(3) prohibits an individual addicted to controlled substances from possessing a firearm, yet an individual attains the status of a drug addict without a court proceeding of any kind"), quoting, *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999). The Supreme Court noted that §922(g) sought "to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society."  *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 112 (1983)(internal citations and quotation marks omitted), superseded by statute, see *United States v. Pennon*, 816 F.2d 527 (10th Cir. 1987).  However, no such demonstration is needed before a conviction under §922(g)(3) is obtained.

At the same time as §922(g)(3) is overbroad in its sweep of, potentially, any and

all users of illicit drugs, it is too narrow to truly further the government interest identified

when it was enacted.  The goal of the Gun Control Act was to "broadly apply the

prohibition against the ownership of firearms by 'mentally unstable' or 'irresponsible'

persons."  *United States v. Waters*, 23 F.3d 29, 35 (2nd Cir. 1994).  However, it limits the

class of "irresponsible" persons targeted by §922(g)(3) to persons who are addicted to or

merely use only a particular class of intoxicants.  Section 922(g)(3) points to the

definition of "controlled substance" found in 21 U.S.C. §802(6), which includes "a drug

or other substance, or immediate precursor, included in schedule I, II, III, IV, or V" of the

Controlled Substances Act.  That definition also specifically excludes "distilled spirits,

wine, malt beverages, or tobacco . . .."  21 U.S.C. §802(6).  Thus the class of prohibited

persons excludes a vast number of those "irresponsible" persons intoxicated by alcohol

who act violently when so intoxicated.  See, e.g, *Begay v. United States*, 553 U.S. 137,

161, 128 S.Ct. 1581, 1596 (2008) (Alito, J., dissenting) (noting that "[a]lcohol use often

precedes violent crimes").  Nor does it include those who, while using a controlled

substance lawfully, nonetheless are impaired by its affects.[1]  Therefore, §922(g)(3) does

not touch the "irresponsible" habitual alcoholic who engages in reckless gun play while

intoxicated, but subjects a person who occasionally smokes marijuana and happens to

---

[1]

 Although §922(g)(3) does not define "unlawful user," regulations define it as "any person who is
a current user of a controlled substance in a manner other than as prescribed by a licensed physician."
27 C.F.R. 478.11

have guns in his home to serving up to ten years in prison.  The combined overbreath and

underbreath of the prohibition shows that it is not sufficiently narrowly tailored to avoid

infringing on Second Amendment rights.  Even if intermediate scrutiny is the standard the

important government interest is not substantially served by§922(g)(3). Unlike the

restrictions on the right to bear arms that the Supreme Court suggested were permissible

in the *Heller dicta*, the restriction in §922(g)(3) is of recent vintage.  While prohibitions

on felons possessing firearms date back to the Founding, §922(g)(3) is of very recent

vintage, being enacted as part of the Gun Control Act of 1968.  Pub.Law 90-618.  The

final version of §922(g) arose after a dispute between the two Houses of Congress over

its proper scope.  The House version of the bill included prohibitions on the sale and other

dispositions of firearms and ammunition extended to "a narcotic addict or drug user."

H.R. Conf. Rep. No. 90-1956, at 4430 (1968).  By contrast, in the Senate version was

more limited in scope and had "no prohibition was placed on sales or other dispositions,

shipments, or receipts, of firearms or ammunition involving narcotic addicts[ or] drug

users . . .."  *Ibid*.  For reasons unclear from the legislative record, the bill agreed to in

conference "adopt[ed] the broader restrictions in the House bill."  *Ibid*. Indeed, any

regulation of controlled substances is of comparatively recent vintage.  The regulation of

controlled substances in the United States dates back only to the beginning of the last

century, when Congress passed the Harrison Narcotics Act,  in 1914.[2]  Pub. L. No.

---

[2] Prior to the 1914 regulation, the Sears & Roebuck catalog even lawfully offered a syringe and small amount of cocaine for sale for $1.50.  Alexander Cockburn, *Whiteout: The CIA, Drugs and*

63-223, 38 Stat. 785 (1914); see also, Amy J. Dilcher, *Damned if They Do, Damned if They Don't: The Need for a Comprehensive Public Policy to Address the Inadequate Management of Pain*, 13 Annals Health L. 81, 85-86 (2004)(discussing the history of federal regulation of controlled substances); Maxwell J. Mehlman, et. al., *Doping in Sports and the Use of State Power*, 50 St. Louis U. L.J. 15, 50, fn. 209 (2005)(same).  By contrast, felons have traditionally lost certain civil rights as a result of their conviction, including the right to vote, serve on a jury, and hold public office, *United States v. Hassan El*, 5 F.3d 726, 734 (4th Cir. 1993).  The distinction between felons and the mentally ill, on the one hand, and those who use or are addicted to controlled substances, on the other hand, is particularly important given the scope of the Supreme Court's *dicta* in *Heller* about what restrictions on the Second Amendment right may be appropriate. Although it noted that the given examples were not exclusive, the Court identified felons and the mentally ill is as two groups that might constitutionally be prohibited from possessing firearms.  *Heller*, 128 S.Ct. at 2816-2817.  At the Founding, those two groups shared a type of disability that greatly curtailed their civil rights.  Both, for example were prohibited from voting.  As one commentator pointed out, "the franchise and the right to arms were 'intimately linked' in the minds of the Founders and of prior and subsequent republican thinkers."  Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480-481 (1995).  At the time, "felons, children, and

*the Press*, 71(1998).

the insane were excluded from the right to arms precisely as (and for the same reasons) they were excluded from the franchise."  *Id*. at 480; see also, *Black's Auto Repair and Towing, Inc. v. Monogalia Magistrate Court*, 567 S.E.2d 671, 675 (W.Va. 2002) (explaining that, in civil death, "as a result of the person's felony incarceration status, the person has a status-based legal disability similar to that of an infant or incompetent"). Therefore, the basis for denying the right to felons and the mentally ill did not apply to users or abusers of controlled substances at the Founding and should not apply now. In concluding its opinion in *Heller*, the Supreme Court rejected a dissenter's argument for a "freestanding 'interest-balancing' approach," noting that such an approach was inappropriate when dealing with fundamental enumerated rights.  *Heller*, 128 S.Ct. at 2821.  "Like the First [Amendment]," the Court said of the Second, "it is the very product of an interest balancing by the people."  *Ibid*.  (emphasis in original).  While recognizing the "problem of handgun violence in this  country," the Court made it clear that "the enshrinement of constitutional rights necessarily takes certain policy choices off the table."  *Id*. at 2822.  The prohibition in §922(g)(3) is one such choice that is now off the table. Because it sweeps so broadly, §922(g)(3) violates the right enshrined in Second Amendment, either facially or in this case specifically. The Supreme Court has declared that a "facial challenge to a legislative Act is, of course, the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987),

quoted in *Jordan by Jordan v. Jackson*, 15 F.3d 333, 343 (4th Cir. 1994).  However, that

formulation has come under criticism from the Circuits and members of the Supreme

Court itself.  See, *United States v. Frandsen*, 212 F.3d 1231, 1235, fn. 3 (11th Cir.

2000)(explaining and cataloging the criticism).  In the plurality opinion in *City of*

*Chicago v. Morales*, 527 U.S. 41 (1999), Justice Stevens wrote that "[t]o the extent we

have consistently articulated a clear standard for facial challenges, it is not the *Salerno*

formulation," which was not even decisive in *Salerno* itself.  *Id*. at 55, fn. 22.  The Fourth

Circuit has recognized that the rule of *Salerno* no longer applies in the context of

challenges to abortion regulations,  adopting an undue burden test.  *Richmond Medical*

*Center for Women v. Herring*, 527 F.3d 128, 147-148 (4th Cir. 2008).  This Court should

do the same with regard to regulations that infringe the right enshrined in the Second

Amendment.  The prohibition in §922(g)(3) clearly places an undue burden on the right to

keep and bear arms.  Courts have recognized that "the exact reach of the statute is not

easy to define." *United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2003).  It is a broad

brush that sweeps in any user of controlled substances, regardless of his actual level of

impairment or whether the firearms in question are possessed or used when he is in that

condition.  As shown above, it is both overinclusive in its sweep and underinclusive with

regards to the goal of the Gun Control Act – to keep dangerous weapons out of the hands

of those shown to be "irresponsible." Assuming,  *arguendo*, that §922(g)(3) does not

unduly burden the Second Amendment right sufficiently to be facially invalid, it is

12

unconstitutional as applied in this case.

It is significant that the drug in question in this case is marijuana. There is growing recognition in the United States that the negative effects of marijuana use and the impact of marijuana users on society has been greatly misunderstood and overstated.  In 2012 both Washington and Colorado legalized the drug and utilize it as a source of revenue. Marijuana use and possession is, however, still illegal under federal law as set forth in 21 U.S.C. § 841.  Twenty states and Washington DC have passed laws allowing smoked marijuana to be used to treat a variety of medical conditions.[3] Thus, a person can legally be using marijuana in Washington, Colorado, or any other state in which use has been decriminalized, and still be charged with a violation of 18 U.S.C. § 922(g)(3).  In *Willis v. Winters*, 2011 Ore. LEXIS 445, 350 Ore. 299, 253 P.3d 1058 (2011) *en banc, cert. denied, Winters v. Willis*, 2012 U.S. LEXIS 209 (U.S. Jan 9, 2012) the Oregon Supreme Court demonstrated the absurdity of the current interaction between state marijuana laws

---

[3] Alaska 1998, Measure 8, SB 94, Statute 17, Chapter 37; Arizona 2010, Proposition 203; California 1996, Proposition 215 (1996), SB 420 (2003); Colorado 2000, Amendment 20; Connecticut 2012, HB 5389; Delaware 2011, SB 17; Hawaii 2000, SB 862; Illinois, 2013, HB 1 (effective January 1, 2014; Maine 1999 Question 5 (2009), LD 1811 (2010), LD 1296 (2011); Maryland, 2003,HB 702 (2003), SB 308 (2011), HB 180/SB 580 (2013) HB 1101 - Chapter 403 (2013); Massachusetts 2012, Question 3(2012), Regulations (2013); Michigan 2008, Proposal 1; Montana 2004, Initiative 148 (2004), SB 423 (2011), IR - 124 (2012); Nevada 2000, Question 9 (2000), NRS 453A, NAC 453A; New Hampshire 2013, HB 573 (2013); New jersey 2010, SB 119 (2009); New Mexico 2007, SB 523; Oregon 1998, Oregon Medical Marijuana Act (1998), SB 161 (2007); Rhode Island 2007, SB 791 (2007), SB 185 (2009); Vermont 2004, SB 76 (2004), SB 7 (2007), SB 17 (2011); Washington 1998, Initiative 692 (1998), SB 5798 (2010), SB 5073 (2011); Washington DC 2010, Initiative 59 (1998), LR 720 (2010). http://www.whitehouse.gov/ondcp/state-laws-related-to-marijuana.

and firearms law by holding that county sheriffs acted improperly in denying concealed handgun licenses to applicants who were otherwise qualified but admitted to the regular use of medical marijuana. The court ruled that 18 U.S.C. § 922(g)(3) does not preempt the state's concealed handgun licensing statute. *Id. at 302.* Given this set of circumstances and given the apparent recognition that marijuana is simply not that harmful, there is nothing reasonable about subjecting individuals to a potential ten year prison sentence merely because they use marijuana during a time frame that they also possess firearms. The substantial government interest of gun safety is not reasonably served by § 922(g)(3) in cases where the drug in question is marijuana. Indeed, such legislation cannot pass any level of scrutiny. We appear to be on a continuum with "Reefer Madness" on one end and full federal and state legalization of marijuana on the other. The defendant submits that we are far enough along that continuum such that an individual should not be deprived of important fundamental constitutional rights merely because he or she smokes marijuana.

**Request for a hearing**

Depending on which level of scrutiny this Court deems appropriate, the government bears the burden of proving either that the statute is narrowly tailored to serve a compelling interest or that there is a reasonable fit between the statute and a substantial government interest. The defendant submits that a hearing will be necessary to resolve this issue.

The government objects to this Motion.

No memorandum of law is necessary because authority is cited above.

Respectfully submitted,
Johnathon Irish
By His Attorney,

Date: April 1, 2014                    /s/ Jonathan R. Saxe
                                       Jonathan R. Saxe
                                       N.H. Bar No. 8226
                                       Assistant Federal Defender
                                       Federal Defender Office
                                       22 Bridge Street
                                       Concord, NH 03301
                                       Tel. (603) 226-7360
                                       E-mail: jonathan_saxe@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that the above document was served on the following persons on April 1, 2014,  and in the manner specified herein: electronically served through ECF to AUSA Nick Abramson and US Attorney John Kacavas.

/s/ Jonathan R. Saxe
Jonathan R. Saxe
N.H. Bar No. 8226
Assistant Federal Defender
Federal Defender Office
22 Bridge Street
Concord, NH 03301
Tel. (603) 226-7360
E-mail: jonathan_saxe@fd.org

- 15 -