UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:13-cr-00142-PB |
| v. ) | |
| ) | |
| JOHNATHON IRISH ) | |
| _____) | |

<u>UNITED STATES' OBJECTION TO THE DEFENDANT'S RENEWED MOTION FOR BAIL</u>

The United States objects to the defendant's renewed Motion for Bail, and requests that the Court order the continued detention of the defendant pending trial. For the reasons set forth below, the defendant still presents a real and substantial danger not only to the community at large, but, more specifically, to prospective trial witnesses, and as this Court previously found, there are no conditions or combinations of conditions that will reasonably assure their safety and the integrity of the upcoming trial.

<u>Background</u>

The defendant is presently charged with aiding and abetting the making of a material false statement during the acquisition of a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 2; possessing firearms and ammunition as a prohibited person, that is, a regular user of the controlled substance marijuana, in violation of 18 U.S.C. § 922(g)(3); and one count of making a material false statement to a federal agent during the investigation of these (and other) crimes, in violation of 18 U.S.C. § 1001.[1]

---

[1] The defendant was also charged, in the original indictment, with one count of engaging in the business of dealing in firearms – precisely, assault rifles – without a federal firearms license, in violation of 18 U.S.C. § 922(a)(1)(A), and a second count of making a material false statement to a federal agent in violation of 18 U.S.C. § 1001. Those two counts have since been dismissed, although the conduct underlying those charges is still relevant to the danger calculus in this case.

In addition to the present charges, the defendant, at the age of twenty-eight, already carries a lengthy criminal history, including convictions for criminal threatening (December 2003), carrying illegal weapons (October 2006), disorderly conduct (October 2007), theft by unauthorized taking (July 2008), possession of marijuana (October 2008), criminal threatening (October 2008), criminal trespassing (July 2009), and disorderly conduct (January 2013).

## Factual Proffer

The evidence in this case demonstrates that throughout 2013, the defendant built and sold custom assault rifles for profit without the requisite federal firearms license. Among the illicit firearms transactions were three sales to an undercover FBI agent (hereafter "UC") on May 6, June 21, and October 4, 2013. On each of those dates, the defendant arrived at a pre-arranged location where he exchanged, for cash, a total of three assault rifles that had been pre-ordered by the UC, and which the defendant had constructed himself from component parts. Throughout those transactions, which were recorded on videotape, and in other recorded conversations with a confidential informant, the defendant can be seen and heard describing the many firearms he has built and sold to customers over the preceding two years.

In order to maintain his ongoing venture to build and sell firearms, the defendant needed to obtain the necessary parts, including assault rifle lower receivers.[2] The evidence will establish that on September 21, 2013, the defendant drove his girlfriend (hereafter "S.T.") to a federally licensed firearms dealer, provided her with cash, and asked her to purchase an assault rifle lower receiver, in her name, to avoid any delay arising from a background check of his own name. Indeed, the defendant, after being arrested on federal charges and advised of his Miranda rights,

---

[2] The "lower receiver" is the part of the firearm that houses the operating parts – including the trigger group and magazine port – and typically holds the firearm's serial number. A lower receiver itself constitutes a "firearm" pursuant to 18 U.S.C. § 921(a)(3)(B).

2

admitted as much when he stated that S.T. had purchased the lower receiver for him in order to circumvent the background check of his name and avoid any associated delays.

While the defendant was purchasing, possessing, and selling various firearms and ammunition, he regularly used marijuana, purchasing and smoking it on a weekly (and often daily) basis with S.T. and a host of other individuals in and before 2013.

During the course of the federal investigation, the defendant agreed to speak to federal agents on multiple occasions.  In one particular interview in February of 2013, the defendant, when asked by FBI Special Agent Philip Christiana about the current location of his personal firearms, stated that he had recently sold them all to a friend.  A few days later, in a recorded telephone call, the defendant admitted that he had actually buried his firearms at a nearby campground, presumably to avoid their seizure and retention by law enforcement.  Shortly thereafter, the defendant was recorded on videotape displaying the firearms he claimed had been sold.

The defendant was held in state custody on unrelated domestic violence charges from November 1, 2013, until February 14, 2014, when those charges were dropped and the defendant was transferred to federal custody on the basis of his outstanding indictment.  At that time, he filed his first Motion for Bail, which was denied by the Court.  See United States v. Irish, 1:13-cr-00142-PB, *Order of Detention Pending Trial*, at *3 (docket no. 44, Mar. 27, 2014) (McAuliffe, J.) ("Defendant's criminal record makes it clear that he is a recidivist, and one prone to employ violence; he has made very serious threats of violence and retribution against potential witnesses and law enforcement agents in this case while incarcerated and release on bail would enable him to carry out such threats; the evidence of guilt is particularly strong in this case; and, defendant's attitude and characteristics as evidenced at the hearing virtually compel the

conclusion that his release even in the strictest of conditions would not serve to adequately protect other persons in the community.").

## Argument

The United States objects to the defendant's renewed Motion for Bail, and moves for continued detention pursuant to 18 U.S.C. § 3142(f). Because the Court has already denied the defendant's initial Motion for Bail, and found that the government demonstrated by clear and convincing evidence the absence of any conditions that will reasonably assure the safety of the community and integrity of this trial, see id., the burden is on the defendant to demonstrate "that information exists that was not known to [him] at the time of the [original detention] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B). The defendant fails to meet that burden. Before addressing the defendant's identified bases for reconsideration, however, the government will first reiterate the many reasons why detention was – and still is – appropriate. Specifically, each of the factors enumerated in 18 U.S.C. § 3142(g) weighs heavily in favor of detaining the defendant pending trial.

**Nature of the Crime (18 U.S.C. § 3142(g)(1))**

The majority of the defendant's criminal charges arise from conduct involving the possession, purchase, or sale of firearms (or false statements intended to disguise that firearm activity). Consequently, at its heart, this is a firearms case – to which Congress has called particular attention in calculating a defendant's potential danger to the community. See 18 U.S.C. § 3142(g)(1) (specifying a select group of cases for particular consideration, including "whether the offense . . . involves . . . [a] firearm, explosive, or destructive device"). Of

4

particular import is the type of firearm involved.  The defendant was purchasing parts to build and sell *assault rifles* without the appropriate paperwork, which are notoriously dangerous weapons.  The defendant's possession and sale of such weapons, and his ability to build them from component parts, favors his continued detention pending trial.  Cf. United States v. Jones, 2013 WL 6698105, at *2 (D.D.C. December 19, 2013) (finding that the nature and circumstances of the offense, pursuant to § 3142(g)(1), favored the defendant's continued detention pending trial, in part because a fully loaded, semi-automatic assault rifle with ammunition was found at the defendant's residence during the execution of a search warrant).

### Weight of the Evidence (18 U.S.C. § 3142(g)(2))

The weight of the evidence in this case is overwhelming.  The defendant was recorded on videotape selling three assault rifles to an undercover federal agent, and during those transactions and other recorded conversations with a confidential source, the defendant described the many additional firearms he had built and sold for profit.  In addition to the recorded sales and conversations, the government has also obtained several written communications between the defendant and various individuals on Facebook, in which the defendant plainly states that he builds and sells assault rifles – "ARs" – for money.  Consistent with these representations, multiple witnesses may testify that the defendant personally pitched his services to build them assault rifles for below-market prices.

The defendant also made statements – some recorded during the course of the investigation, and others made to federal agents immediately after his arrest on federal charges – that on September 21, 2013, he drove his girlfriend, S.T., to a federally licensed firearms dealer, where he provided her with money and asked her to purchase an assault rifle lower receiver in her name, in order to avoid the use of his own name in the required background check.  As the

defendant explained, he needed the lower receiver to build the third assault rifle that he subsequently sold to the UC only two weeks later, and was unwilling to risk any delays.

The evidence is just as strong with regard to the defendant's regular marijuana use. More than half-a-dozen witnesses will testify that they sold marijuana to the defendant, saw the defendant using marijuana, or used marijuana with the defendant, on a weekly, if not daily basis during the course of 2012 and 2013, when he possessed multiple firearms and ammunition that had traveled in interstate commerce. This evidence is corroborated by text messages to various individuals from the defendant's cellular phone, in which he plainly refers to the purchase and use of marijuana; and by marijuana remnants and paraphernalia seized from the defendant's house shortly after his arrest on state charges.

Finally, in addition to the recorded audio and video of the defendant acknowledging his false statement to a federal agent (about having sold all of his firearms to a friend), the defendant explicitly admitted in his post-arrest interview that he had, in fact, lied in February of 2013 about selling his firearms.

In short, this is not a circumstantial case. Much of the evidence derives from the defendant's own inculpatory admissions, both verbal and written, and the testimony of more than a dozen eyewitnesses.

**History and Characteristics of the Defendant (18 U.S.C. § 3142(g)(3))**

The defendant, at the age of twenty-seven, already has a litany of criminal convictions. Moreover, the defendant's lengthy criminal history, in conjunction with myriad police reports filed over the years by family members, former friends, and neighbors, demonstrate a propensity for using firearms in furtherance of his often violent and aggressive behavior. Indeed, the defendant has acknowledged in recorded prison calls that he has difficulty controlling those

6

aggressive tendencies, and is unable to self-manage his anger.  Some examples of that historical pattern of violent and confrontational behavior with firearms include the following:

- In May and October of 2011, the defendant posted YouTube videos in which he stated that any perceived threat to his family will be met with deadly force;

- In August of 2012, reports filed with the Brentwood, New Hampshire Police Department detail an incident during which the defendant confronted with a firearm two teenage girls, who had parked in the defendant's neighborhood to play a prank on a high-school friend;

- On February 23, 2013, the defendant attended a firearms rally in front of the State House in Concord, New Hampshire, during which he openly carried an assault rifle, among other firearms and ammunition.  Immediately after that rally, the defendant, in a recorded conversation, stated that he did not bring his daughter to the rally because he was concerned there might be a firefight with authorities;

- In September of 2013, an individual was driving through the defendant's residential neighborhood when the defendant, openly carrying a firearm, yelled at him to slow down.  According to police reports, the individual exited the vehicle to confront the defendant, at which point the defendant brandished his firearm; and

- In late October of 2013, the defendant asked the local police for permission to fire blank rounds to scare children at Halloween.

**Nature and Seriousness of the Danger Posed by Defendant (18 U.S.C. § 3142(g)(4))**

The nature and seriousness of the danger posed by the defendant are not limited to the aforementioned anger management issues, or his penchant for using firearms in support of his aggressive outbursts; even more concerning are statements and actions of the defendant that evidence an immediate threat to potential witnesses in this case.  For example, in a recorded

prison call, the defendant stated that "if anything happens to [the defendant's] daughter or mother, [S.T.] is going in a hole." In a different recorded prison call, the defendant expressed his belief that a friend might be cooperating with authorities, and stated that, if true, he would "slit [the friend's] throat" and "bury him." The defendant has also menacingly stated that "if I get out of here and my daughter is in the system and I can't get her out, there will be hell to pay from all angles – anyone who has anything to do with that."

Perhaps the primary target of the defendant's vitriol, however, is the lead case agent, FBI Special Agent Philip Christiana, whom the defendant evidently blames for all of his current legal woes. The defendant can be heard in multiple prison calls casting blame on Special Agent Christiana, and boasting that he "knows where [Special Agent Christiana] lives," and where Special Agent Christiana's family attends church. Putting a point on the threat is information the United States has obtained indicating that the defendant may have reached out to at least one former associate in an attempt to obtain a firearm should he be released pending trial.

Beyond the risk of physical danger, there is also a real risk of witness tampering and intimidation – one that has already borne fruit for the defendant. When the defendant was initially charged by complaint, his girlfriend, S.T., worked closely with authorities, and provided statements which strongly implicated the defendant in the aforementioned criminal conduct, including sworn testimony before a federal grand jury. In several recorded prison calls, however, the defendant stressed to family and friends his desire to keep S.T. in the fold to "help his case," and asked a joint friend to pass along the following message: "If [S.T.] doesn't come clean on her story, if someone doesn't get her the message, we both go down, or she goes down, and that's just how it is." During an interview with S.T. in early December of 2013, S.T. informed the prosecutor and a federal agent that the message had, in fact, been passed to her

8

from the defendant through a mutual friend. Unsurprisingly, two weeks later, after several recorded prison calls between the defendant and S.T. (in which S.T. assumed a pseudonym to avoid detection), S.T. refused to continue speaking with authorities. On January 16, 2014, a friend of the defendant's received the following Facebook message from the defendant's account: "Its [S.T.] . . . Johnathon has me using his facebook to get in touch with people as I had to delete my account for many reasons. [. . .] Im working with those that I can to get him off of his state charges and his federal charges . . . ."

The defendant's actions demonstrate an obvious willingness to exert influence over potential trial witnesses, and his release could seriously compromise the integrity of the upcoming trial.

### The Defendant has presented no information that has a material bearing on the issue of whether there are conditions of release that will assure the safety of the community

The Court previously found, on the basis of the aforementioned information, that the defendant presents a danger to the community that cannot be sufficiently remedied by any combination of conditions. The defendant's renewed Motion for Bail identifies no new (or previously unknown) fact that has any material bearing on that determination. Specifically, as the government understands it, the defendant presents six new grounds for release, to include:

(1) That the defendant wishes to spend time with his terminally ill grandfather;

(2) That the treating physician at the Bureau of Prisons, in presenting her competency findings, "stated in her report that [the defendant] is NOT of any threat to anyone not to the community, not to himself and not to others";

(3) That the defendant would be able to more efficiently work with his attorney to prepare for trial;

9

(4) That the health of the defendant's girlfriend is failing, largely as a result of the stress brought on by the defendant's extended absence from the household;

(5) That the health of the defendant's young daughter is being negatively impacted by the defendant's extended absence from the household; and

(6) That an outbreak of staff infection in the correctional facility places the defendant at particular physical risk, given the loss of one eye during his childhood.

Even assuming, for the sake of argument, that these representations by the defendant are factually accurate,[3] none constitute sufficient bases for the Court to order the defendant released pending trial. Every criminal defendant, if asked, could provide a laundry-list of reasons why being free, rather than detained in a correctional facility, would be preferable, and perhaps even beneficial to their well-being and that of their families. But that is not the standard upon which the Court grounds its determination on detention. Rather, the question is whether there are conditions that might be imposed to sufficiently minimize the obvious danger that the defendant poses to the community pending trial. Here, no such conditions exist.

## Conclusion

The defendant's criminal history, his pattern of employing firearms to support his violent and aggressive behavior, his specific threats and attempt to acquire a firearm pending release, his prior lies to authorities about the whereabouts of his personal firearms, and his ability to easily build assault rifles from component parts, when taken together, demonstrate his danger to the community and trial witnesses in particular, and therefore the need to keep him detained pending trial.

---

[3] The government does dispute the defendant's characterization of Dr. DiMisa's competency assessment, in terms of whether that assessment reached a conclusion on the defendant's danger to the community. In any event, regardless of the competency evaluation's exploration of the defendant's dangerousness, its purpose was entirely distinct from the nature of the instant determination, and did not consider much of the information provided here, which is critical to making a decision on detention.

For all of these reasons, the United States respectfully requests that this Court deny the defendant's renewed Motion for Bail, and order that the defendant remain detained pending his upcoming trial.

                                            Respectfully submitted,

                                            JOHN P. KACAVAS
                                            United States Attorney

                    By:     /s/ Nick Abramson
                            Assistant U.S. Attorney
                            Massachusetts Bar # 672267
                            53 Pleasant Street, 4th Floor
                            Concord, New Hampshire 03301
                            (603) 225-1552
                            Nick.Abramson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2014, I electronically filed the United States' Objection to the defendant's Motion for Bail with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

/s/ Nick Abramson____
Assistant U.S. Attorney