UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                           \*
UNITED STATES OF AMERICA     \*
                                \*   13-cr-142-01-PB
          v.               \*   December 11, 2014
                                \*   12:25 p.m.
JONATHON IRISH            \*
                                \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF CHANGE OF PLEA
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:

| | |
|---|---|
| For the Government: | John P. Kacavas, USA<br>Nick Abramson, AUSA<br>U.S. Attorney's Office<br>53 Pleasant Street<br>Concord, NH 03301 |
| For the Defendant: | Lawrence A. Vogelman, Esq.<br>Kirk Simoneau, Esq.<br>Nixon Raiche Vogelman &<br>   Slawsky, P.A.<br>77 Central Street<br>Manchester, NH 03101 |
| For Probation: | Jodi Gauvin |
| Court Reporter: | Diane M. Churas, LCR, CRR<br>Official Court Reporter<br>U.S. District Court<br>55 Pleasant Street<br>Concord, NH 03301<br>(603) 225-1442 |

1                    BEFORE THE COURT

2           THE CLERK:  Court has before it for

3    consideration a change of plea hearing in Criminal Case

4    No. 13-cr-142-01-PB, United States of America versus

5    Jonathon Irish.

6           THE COURT:  All right.  Mr. Irish, I

7    understand you want to plead guilty to Counts 1 and 2 of

8    the indictment.  Is that right?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  All right.  I'm going to ask you

11   some questions and you need to speak your answers

12   because we are making a recording of the proceeding.

13   You also need to respond truthfully so I will direct the

14   deputy clerk to place you under oath now.

15          (Defendant sworn.)

16          THE COURT:  You can be seated and remain

17   seated throughout the proceeding.

18          So if you don't understand something I'm

19   saying to you, interrupt me and ask me to explain it.

20   Do you understand?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  So let's start right off the bat

23   with the most important thing, and that is, you have a

24   right to have a jury trial on these charges.  No one can

25   take that right away from you.  No one can make you give

1    up that right.  The prosecutor can't, the defense lawyer

2    can't, I can't.  Do you understand?  That's totally up

3    to you.  Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  And do you wish to give up your

6    right to a jury trial and plead guilty to these charges?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Okay.  And there's a description

9    of facts in the plea agreement.  Are you prepared to

10   admit that those facts are true?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Okay.  So let's first establish

13   some basic things, and I ask these of everybody.  Don't

14   feel insulted in any way.  It's just standard questions

15   I have to ask.  Do you have any difficulty reading?

16             THE DEFENDANT:  No, your Honor.

17             THE COURT:  How far did you go in school?

18             THE DEFENDANT:  I graduated high school.

19             THE COURT:  And are you taking any medicines

20   at all today?

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  Are you under the influence of

23   drugs or alcohol?

24             THE DEFENDANT:  No, your Honor.

25             THE COURT:  So I know you have had a history

1   of some mental illness and I want to just review some of

2   that with you now.  What's your understanding of the

3   diagnoses that you've had in the past?

4            THE DEFENDANT:  In the past I've had quite a

5   few misdiagnoses that were actually throughout this case

6   per Dr. Damesa.  There were only two diagnoses that were

7   found to be current and to be factual.

8            THE COURT:  Okay.  And what are those?

9            THE DEFENDANT:  Post-traumatic stress disorder

10  and antisocial personality and anxiety disorder.

11           THE COURT:  So let me focus on the PTSD and

12  the anxiety disorder.  Those can produce some pretty

13  upsetting symptoms in a person, and I want to know today

14  as you sit here today, do you feel that you are able to

15  make decisions on your own behalf?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Do you feel that your mental

18  illness is in any way interfering with that, such as

19  maybe like I might be having too much anxiety and I

20  can't make a decision?

21           THE DEFENDANT:  No, sir, I don't believe so.

22           THE COURT:  Okay.  So you feel that you are

23  rational, competent, capable to make a decision here.

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Okay.  And I recognize that you do

1   have these diagnoses of PTSD and anxiety, but I don't

2   see anything in your interactions with me today that

3   would cause me to question your own judgment about that

4   particular point.

5           So as I mentioned, you have a right to have a

6   trial on this charge, and, as you know, it's not up to

7   you to prove your innocence.  It would be up to the

8   prosecutor to prove your guilt beyond a reasonable

9   doubt.  You wouldn't have to prove anything.  But to

10  prove your guilt the prosecutor would have to prove

11  certain things.  They're called elements of the offense

12  and they're described in the plea agreement that you

13  have signed here.

14          So there are two charges.  The first charge is

15  aiding and abetting the making of a material false

16  statement.  The second charge is making a materially

17  false statement to a federal agent in violation of 18

18  USC, Section 1001.

19          The aiding and abetting charge has the

20  following elements.  The first thing that the prosecutor

21  would have to prove is that an individual knowingly made

22  a false statement as charged in the indictment.  Second,

23  he would have to prove that the individual made the

24  false statement -- excuse me, at the time the individual

25  made the false statement, the individual was trying to

 1   purchase a firearm from a federally licensed firearm

 2   dealer.  Third, that that statement was intended to or

 3   likely to deceive the licensed dealer about a fact

 4   material to the lawfulness of the sale.  And, fourth,

 5   that you consciously shared the individual's knowledge

 6   of the false statement, intended to help that

 7   individual, and took part in the endeavor seeking to

 8   make it succeed.  So they would have to prove each of

 9   those things for you to be guilty of that charge.  Do

10   you understand?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  The 1001 charge has the following

13   elements.  First, that you made a statement to a federal

14   agent; second, that the statement was false; third, that

15   it was material; fourth, that you made the false

16   statement knowingly and willfully; and, fifth, that the

17   statement pertained to an activity within the

18   jurisdiction of a federal agency.  Those are the things

19   that the prosecutor would have to prove in order for you

20   to be found guilty of the 1001 charge.  Do you

21   understand?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Let me just establish.  There is a

24   written plea agreement in this case and you have signed

25   it.  Have you read that agreement?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And have you had a chance to talk

3  to your lawyer about it?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you feel you understand it?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Also, the charges contained in the

8  indictment, there are two counts that you are being

9  tried on.  Did you have a chance to read those charges?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And did you talk to your lawyer

12  about them?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And do you feel you understand

15  them?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  So in the plea agreement that you

18  signed, Section 3 called "offense conduct" has a brief

19  statement of the evidence the government says it would

20  produce against you.  Is there anything in that

21  statement that you think is wrong?

22          THE DEFENDANT:  No, your Honor.

23          THE COURT:  Are you pleading guilty to both of

24  these charges because you, in fact, are guilty of the

25  charges?

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  So the maximum possible term that

3    you face here, up to ten years of imprisonment on Count

4    1 and five years on Count 2, a maximum fine of up to

5    $250,000 on each count, a term of supervised release of

6    not less than one year and not more than three years.

7    If you violate supervised release, you could be sent

8    back to prison.  You could be required to make

9    restitution.  You will have to pay a $100 special

10   assessment for each count, totaling $200.  Those are the

11   maximum penalties.  Do you understand?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Have you talked to your lawyer

14   about how the Sentencing Guidelines may apply in this

15   case?

16             THE DEFENDANT:  Yes, your Honor, I believe so.

17             THE COURT:  So when I sentence you, I'm going

18   to use those guidelines to determine something called a

19   guideline sentencing range.  That's a range of months.

20   But then I treat the guidelines as advisory.  I don't

21   have to follow them.  I can sentence you within that

22   range or I could sentence you above that range or I

23   could sentence you below that range.  Do you understand?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  You've entered into a plea

1    agreement with the prosecutor.  Everything you agree to

2    do in that plea agreement you have to do.  You're bound

3    by that.  Everything the prosecutor agreed to do, he's

4    bound by that.  For the most part I'm not bound by

5    what's in the plea agreement.  I get to sentence you the

6    way I think you should be sentenced, but in this case

7    there is an agreement that you've entered into with the

8    prosecutor that is very important that is binding on me

9    in a limited sense.

10            So in Section 6 it usually is -- let me check.

11            MR. KACAVAS:  It is, your Honor.

12            THE COURT:  Section 6 of the plea agreement,

13   there's an agreement that's entered into pursuant to

14   Rule 11(c)(1)(C) and that agreement has the following

15   terms:

16            The United States agrees that it will not seek

17   charges against you based upon actions set forth in the

18   dismissed counts, Count 3, Count 4, and Count 5.  And

19   that stipulation doesn't require you to waive any

20   defenses you may have to those charges.

21            The agreement also is that you should be

22   sentenced to a term of imprisonment of 18 months

23   followed by a term of supervised release of three years,

24   and that stipulation is intended to be binding pursuant

25   to Rule 11(c)(1)(C).

1          So what is meant by binding is this.  I will

2   wait until the sentencing hearing.  If I find that I can

3   accept that agreement, I will just go ahead and sentence

4   you to that amount.  If for some reason I can't, either

5   I think it's too high or too low or whatever, I will

6   stop the proceeding and tell you I can't do that.  If I

7   reach that decision, I will tell you here's what I would

8   do.  You can either take this different sentence or you

9   can go back and have your not guilty plea reinstated.

10  Do you understand?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  But that will be the only reason

13  you will be allowed to withdraw your guilty plea if I

14  accept it is if I can't give you the 18-month sentence.

15  Do you understand?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Okay.  Now, by pleading guilty

18  you're giving up certain rights.  I want to make sure

19  you understand those rights.  So you have a right to a

20  jury trial.  That would be 12 people.  All 12 people

21  would have to find you guilty beyond a reasonable doubt.

22  You could be represented by an attorney at no cost to

23  you.  You could bring witnesses into court and have them

24  testify for you.  You could testify if you wanted to.

25  If you wanted to remain silent, you could remain silent

1   and I would tell the jury they couldn't hold your

2   silence against you.  You could be present in court

3   throughout the proceeding, and you could have your

4   lawyer cross-examine any witnesses who testify against

5   you.

6           By pleading guilty you're giving up all of

7   these rights.  If I accept your guilty plea there won't

8   be a trial in this case.  The only thing that will be

9   left is for me to sentence you, and I will determine any

10  facts that are necessary to sentence you.  Do you

11  understand?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  You are also giving up your right

14  to appeal your conviction and sentence or to challenge

15  it in a collateral review proceeding which is any kind

16  of post-appeal challenge, appeal, Section 2255 motions,

17  habeas corpus, things like that.  There are some limited

18  exceptions.  You could argue that you were not competent

19  today.  You could argue that your lawyer gave you

20  constitutionally ineffective advice.  You could argue --

21  if the Supreme Court or the Court of Appeals comes down

22  with a new rule of law that applies retroactively to

23  people like you, you could invoke it, and if for some

24  reason I were to give you a higher sentence than called

25  for by the guidelines, your appeal and collateral review

1  rights will be preserved.  But those are the only

2  exceptions.  General rule will be no appeal, no

3  collateral review, if I accept your guilty plea.  Do you

4  understand?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Has anyone threatened you in an

7  effort to try to get you to plead guilty?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  So we've had some discussions in

10  the past about maybe threats against family members or

11  girlfriend or common law wife, things like that.  Has

12  anybody threatened you in that way to try to get you to

13  plead guilty to this particular plea agreement?

14          THE DEFENDANT:  No, your Honor.

15          THE COURT:  Okay.  And let me ask counsel --

16  let me ask the government.  So this is a formal plea

17  offer.  At any point in these proceedings did you extend

18  a formal plea offer to the defendant other than this

19  one?

20          MR. ABRAMSON:  Yes, your Honor.

21          THE COURT:  Tell me about that.

22          MR. ABRAMSON:  In July of this year, 2014, an

23  offer was extended.  I believe it was 15 months.  And

24  then in September of this year an offer was extended, a

25  formal offer, of 12 months and one day, and both of

1    those were declined leading to the trial and the

2    subsequent offer.

3            THE COURT:  All right.  Let me ask counsel.

4    To your knowledge is that correct that those were the

5    only two offers that were extended?

6            MR. VOGELMAN:  Yes, your Honor.  I don't know

7    what happened back when Mr. Saxe was there.

8            THE COURT:  As far as you know, were those

9    offers, in fact, presented to the client and rejected?

10           MR. VOGELMAN:  Correct, your Honor.

11           THE COURT:  And do you agree that those offers

12   were presented and rejected?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  All right.  Has anyone made any

15   other promises to you in an effort to try to get you to

16   plead guilty other than the ones that are in this

17   written plea agreement that we talked about?

18           THE DEFENDANT:  No promises, just that no

19   charges would be brought forth on my wife.

20           THE COURT:  So it's not a condition of this

21   plea agreement, but you have been told that they weren't

22   going to bring some charge against your wife?  Is that

23   what you're telling me?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Does the government have any

1    current intention to bring charges against the wife in

2    connection with these matters?

3              MR. KACAVAS:  No current intention, your

4    Honor.

5              THE COURT:  All right.  So it's not a quid pro

6    quo promise bargained for.  It's just simply you

7    representing what the government's current intentions

8    are.

9              MR. KACAVAS:  That's accurate.

10             THE COURT:  All right.  Are you satisfied with

11   the legal advice you've received from your attorney?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  And, counsel, have you advised

14   your client concerning the admissibility of any

15   statements or other evidence the government has against

16   him?

17             MR. VOGELMAN:  I have.

18             THE COURT:  To your knowledge is he pleading

19   guilty because of any illegally obtained evidence in the

20   possession of the government?

21             MR. VOGELMAN:  No, your Honor.

22             THE COURT:  So let's address this issue of the

23   defendant's mental health problems, which he

24   acknowledges he suffers from.  I have not found him to

25   be the type that would call his competency into

1    question, and I know you've had some difficulties over

2    the time in interacting with your client.  But I want to

3    know sincerely as you sit here today, are you aware of

4    anything about the defendant's mental condition or his

5    interactions with you that you think would call into

6    question his ability to waive his constitutional rights

7    and make an important decision like the one he's making

8    today?

9              MR. VOGELMAN:  Not at all, your Honor.

10             THE COURT:  Okay.  So, Mr. Irish, this is the

11   last chance you have to change your mind.  Do you feel

12   you've had enough time to think about your decision?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  And you still wish to plead guilty

15   to both charges.

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Okay.  So I will take your guilty

18   plea now.  Now, you've told me you've read those charges

19   and understand them so I won't read them to you again

20   unless you want me to.  Do you want me to read them to

21   you again?

22             THE DEFENDANT:  No, thank you, your Honor.

23             THE COURT:  All right.  As to the two

24   counts -- let's first take Count 1.  As to Count 1

25   charging you with aiding and abetting the making of a

1    material false statement in connection with the

2    acquisition of a firearm, how do you plead to that

3    charge, guilty or not guilty?

4              THE DEFENDANT:  Guilty, your Honor.

5              THE COURT:  And as to Count 2 charging you

6    with making a material false statement to a federal

7    agent, how do you plead to that charge, guilty or not

8    guilty?

9              THE DEFENDANT:  Guilty, your Honor.

10             THE COURT:  Having questioned the defendant

11   and his counsel on the offered plea of guilty, the

12   defendant and his counsel having informed the Court that

13   they have conferred concerning the offered pleas of

14   guilty and all aspects of the charges against the

15   defendant and any defenses he may have, and the Court

16   having observed the defendant making his answers, his

17   demeanor and manner while answering questions, his

18   attitude and his apparent intelligence, and the Court

19   having observed that the defendant does not appear to be

20   under the influence of any medication, drug, or other

21   substance which could affect his judgment in any manner,

22   the Court finds that the plea of guilty of the defendant

23   is knowingly, voluntarily, and intelligently made with

24   full knowledge of the charges against him and the

25   consequences of his plea, and no threats or coercion

1    have been exerted upon him in any manner.  Accordingly,

2    I accept the defendant's guilty plea.  He's now adjudged

3    guilty of the offenses set forth in Counts 1 and 2.  I

4    will defer acceptance of the plea agreement until the

5    time of sentencing.

6                So how much time has your client done already?

7                MR. VOGELMAN:  Your Honor, he's done a little

8    over 13 months.

9                THE COURT:  So we want to get the sentencing

10   in before the 18-month period; right?

11               MR. VOGELMAN:  Right.  So we have already

12   tentatively, subject to your approval, approved of a

13   date that would do that.

14               THE COURT:  Is that the February 23rd?

15               MR. VOGELMAN:  23rd, yes.

16               THE COURT:  Is the probation officer -- I

17   understand this may accelerate the schedule a little

18   bit.  Are you confident you can get a report prepared by

19   then?

20               MS. GAUVIN:  Yes, your Honor.

21               THE COURT:  All right.  We want to do that so

22   he doesn't spend any extra time in jail.  I appreciate

23   the probation officer's cooperation on that.

24               So sentencing will take place on

25   February 23rd, 2015, at eleven a.m.  The defendant is

1    currently in custody.  I see no reason to change his

2    custody status.

3              Now, if we sentence in February, will he be

4    allowed to leave shortly thereafter or has he got a few

5    more months?

6              MR. VOGELMAN:  No, I think that just about

7    does it, Judge.  On an 18-month, he does 15.3 and

8    that -- the date was picked so that it's like a day

9    after, I think.

10             MR. KACAVAS:  Your Honor, I think that's open

11   and I wouldn't want to make a representation on behalf

12   of the United States until I study that issue and the

13   timing of that issue.  I don't necessarily agree with

14   Attorney Vogelman.

15             THE COURT:  Okay.  Here's what I want to be

16   sure about.  If he's only going to be in custody for

17   another couple of weeks or something after the date, I

18   don't want him shipped off to the Bureau of Prisons.

19             MR. KACAVAS:  I don't think that's going to

20   happen.  Just based on his -- I think he stays.

21             THE COURT:  I think the defendant would rather

22   stay where he is.  Right?

23             MR. VOGELMAN:  Yes.

24             THE COURT:  We want to be sure that whenever

25   we do the sentencing, that there won't be any shipment

1        outside the state.

2                    MR. KACAVAS:  I don't believe --

3                    THE COURT:  I won't let that happen.

4                    MR. IRISH:  Excuse me, your Honor.  I was left

5        under the impression that as of sentencing, on whatever

6        the sentencing date was, which is now the 23rd, that I

7        would be released upon that date.  Now I'm understanding

8        differently.

9                    THE COURT:  I want to assure you this.  I'm

10       going to make sure that you don't get shipped off

11       somewhere, okay?  I can't tell you today the exact good

12       time calculation.  What your lawyer has said is right,

13       as far as I know.  But I can't tell you to the day.  And

14       I understand your point, and if we need to move the

15       sentencing date a couple of days one way or the other, I

16       can do that, too.  So we'll do everything we can to get

17       you out the day you are sentenced.  That's the intention

18       of everybody, but it's an actual mathematical

19       calculation and the prosecutor is just saying to me he

20       hasn't done that.

21                   Look, trust me on this one.  I'm going to try

22       to make sure that you don't -- I'm going to make sure

23       that you're not going to be shipped out of the state.

24       I'm going to make sure that you're going to get the

25       18-month sentence that the parties want you to get,

1    unless something really crazy happens.  You understand,

2    I'm not completely bound.  I will have to see the

3    presentence report.  But if there's nothing unusual in

4    the presentence report, I'm going to give you the

5    18-month sentence and I'm going to sentence you in a way

6    that ensures that you don't get shipped out of state and

7    that you get released, and if what the lawyers have said

8    is true as to how much time you've done in prison and

9    all that, you should be released the day of the

10    sentencing.

11              Nobody can absolutely guarantee that to you.

12    That wasn't a promise that was bargained for, but I'm

13    telling you, I hear you on this.  I know what your

14    concerns are.  I'm going to try to address them.

15              I'm sure your lawyer has explained this to

16    you.  You're going to get an 18-month sentence.  Under

17    the Bureau of Prisons regulations, assuming you've been

18    of good behavior, you're entitled to a certain number of

19    days credit.  The probation officer will remind me how

20    many.

21              MS. GARVIN:  It's about 87 percent.

22              THE COURT:  Yeah.  I don't have the exact

23    number of days in my mind.  Do you know?

24              MR. VOGELMAN:  I thought it was closer to 85.

25    I calculated this at 85 just to make sure.

1                THE COURT:  Okay.  Basically you get a credit.

2       So you only serve -- the exact number none of us have in

3       mind today, but it's 80, 85 percent of that sentence is

4       what you will actually serve, and you'd get credit for

5       all the time that you've been in custody on this charge.

6       So you just count those number of days, and if what your

7       lawyer has said is true, that should be the date about

8       which you're going to be released.  Okay?

9                So I hear you on this.  I'm not going to let

10      you -- the thing I don't want you to do is I don't want

11      you to get in the Bureau of Prisons system.  I want you

12      to be sentenced here, finish your 18-month sentence here

13      and be released.  That's what the parties want you to

14      do.  That's fine with me.  Okay?

15               All right.  So we'll do the sentencing on

16      February 23rd at eleven a.m.  If there's some adjustment

17      that's necessary, the parties can request a status

18      conference with the Court and we will adjust the

19      sentencing date, if necessary.

20               MR. VOGELMAN:  That's fine, Judge.

21               THE COURT:  But I want to be very clear.  I

22      don't want the defendant being shipped out.  I'm not

23      going to let that happen.

24               All right.  The defendant shall remain in

25      custody pending sentencing.  Is there anything else we

1    need to deal with today?

2              MR. KACAVAS:  No, your Honor.

3              MR. VOGELMAN:  No, Judge.

4              THE COURT:  I'm going to go back and dismiss

5    the jury then.

6              (Adjourned at 12:45 p.m.)

```
 1                      C E R T I F I C A T E

 2

 3           I, Diane M. Churas, do hereby certify that the

 4    foregoing transcript is a true and accurate

 5    transcription of the within proceedings, to the best of

 6    my knowledge, skill, ability and belief.

 7

 8    Submitted: 5/28/15
```

**DIANE M. CHURAS, LCR, RPR, CRR**
LICENSED COURT REPORTER, NO. 16
STATE OF NEW HAMPSHIRE